# WESTMORELAND COUNTY.

## December Term, 1798.

### Leſſee of the Executors of THEODORUS BROWERS, *v.* FRANCISCUS FROMM.

*BROWERS* was a *German* catholic prieſt, who after a reſidence in a *Daniſh West-India* iſland, had, a few years before his death removed into *Pennſylvania*, and ſuperintended a catholic congregation near *Greens-burgh* in *Westmoreland* county, and owned two planta-tions there ; which, by his will, dated 24th *October*, 1790, he deviſed as follows :—" To a Roman Catholic prieſt that ſhall ſucceed me in this ſaid place, to be en-tailed to him, and his ſucceſſors, in truſt, and ſo left by him who ſhall ſucceed me to his ſucceſſors, and ſo in truſt and for the uſe herein mentioned in ſucceſſion for-ever. And that the ſaid prieſt for the time being ſhall ſtrictly and faithfully ſay four maſſes, each and every year forever, *viz.* one for the ſoul of the Reverend *Theo-dorus Browers*, on the day of his death, in each and eve-ry year forever, and three others, the following days in each year as aforeſaid, at the requeſt of the Reverend *Theodorus Browers*. And further it is my will, that the prieſt for the time being ſhall tranſmit the land ſo left him in truſt as aforeſaid to his ſucceſſor, clear of all in-cumbrances, as aforeſaid."

The will directed the payment of debts and funeral expences, and the erection of a tombſtone on the grave of the teſtator on the premiſes. The ejectment was brought for the land thus deviſed.

The defendant, a native of *Germany*, was there or-dained a Catholic prieſt, in 1773, and officiated, in that capacity, in various parts of *Germany*. In *February*, 1789, intending to remove to *America*, he obtained from the vicar of the archbiſhop of *Mentz*, a commendatory certificate of miſſion to *America*, as to a country in which there was no biſhop. The Reverend Dr. *John Carrol* of *Maryland*, having been elected by the Roman Catho-lic clergy of *America*, was, by a bull of the preſent *Pope*

*Pius VI.* dated 6th *November*, 1789, conftituted bifhop 1798. of *Baltimore*, with jurifdiction over all the Catholic church within the *United States*, to be fuffragan to no metropolitan, and fubject only to the Apoftolic See.— After *Fromm* had landed in *America*, he applied to bifhop *Carrol*, received pecuniary affiftance from him, and was employed to officiate as a prieft for fome time, in the counties of *York* and *Lancaster* in *Pennfylvania.* Hearing of the devife and death of *Browers*, he removed to *Westmoreland* county, and, of his own authority, took poffeffion of his houfe and the lands; and, 2d *July*, 1791, drew up and figned a writing reciting the manner of his taking poffeffion, as under the will, and procured the executors to fign a certificate of their affent annexed to this writing. On the 7th of *August*, 1791, he wrote to bifhop *Carrol* ftating, that, as he underftood, he had not received him among his clergy, but abandoned him, he had gone near to *Greenfburgh*, and taken poffeffion of the plantation of *Browers*, and been chofen by his congregation, where he would ftay till he could acquire money to pay his debts, and his paffage to his own country, and requefting the bifhop's confent to his election as prieft of *Browers's* congregation.

After *Fromm* had thus got poffeffion of the eftate of *Browers*, the congregation began to doubt his authority, and wanted to turn him off. In *April*, 1794, he entered into a written agreement with the congregation, to officiate as prieft among them, for one year, in confideration of certain fums to be paid by the individual members of the congregation; and to obtain authority from the bifhop of *Baltimore*, for this purpofe; or, if the bifhop fhould refufe authority, then to give up his poffeffion of the eftate. This agreement he figned, adding to his name " *Priest of Unity congregation for one year.*" Not procuring authority from the bifhop, he determined to keep poffeffion of the eftate under the will, on the terms of faying maffes. But conceiving that his agreement would injure his claim, he contrived to get hold of it, under pretence of collecting his fubfcription money, and, having done this, he pocketed the agreement, as it lay on the table, where the fubfcribers were paying him his money; and, when they remonftrated againft this, he tore his name from it, faying, " I am no more

your prieſt, nor you my congregation;" refuſed to give it up; and perſiſted in retaining poſſeſſion of the eſtate.

A certificate of the biſhop of *Baltimore*, dated 5th *Auguſt*, 1795, was produced, ſtating, that by the rules of the Catholic church, no prieſt can exerciſe his mini-ſtry within the juriſdiction of any biſhop, without au-thority from that biſhop; nor leave his congregation, and exerciſe his miniſtry in another, without ſuch au-thority; that *Fromm* never had any authority from him to exerciſe any ſpiritual miniſtry near the place of his reſidence, and, having exerciſed it, was interdicted, and, perſiſting, is ſuſpended.

A certificate was alſo produced from the vicar gene-ral of the archbiſhop of *Mentz*, under the ſeal of his archi-epiſcopal ſee, dated 8th *May*, 1797, ſtating, that *Fromm* is a prieſt capable of ſucceeding to the eſtate of *Browers*; that prieſts may obtain miſſion, from any biſhop, to adminiſter the ſacraments, and enjoy all rights of prieſts, in thoſe places where there is no biſhop; that bulls muſt be promulgated in due manner; that the ſa-crament of the maſs may be validly celebrated by any prieſt, whether a pariſh prieſt or not, although this be interdicted to the prieſt, by the biſhop, and though, by its celebration, the prieſt acts illegally; and that, if maſſes of this kind be founded, by ſuch celebration, the foundation and obligation may be validly ſatisfied.

*Brackenridge*, for the defendant, made eight points.

1. The executors had no authority to leaſe, or make any ſuch agreement, as they made with *Fromm*, in *April*, 1794. If they had any authority, it was to put in poſ-ſeſſion for life; and having done ſo, in *July*, 1791, their power expired; and, after that, the prieſt ſo put in poſ-ſeſſion, is, by the will, to leave it to his ſucceſſor.

2. Executors have *no* authority over the real eſtate, unleſs given by the will. This will gives none.

3. If they had any authority, they have executed it.

4. By the rules of the Catholic church, bulls muſt be *Corp. Jur.* *Can. Extrav.* promulgated in certain forms. The bull conſtituting *Com. L.1. tit.* the biſhop of *Baltimore* has not been in due form pro-*3. c.un.Bonif.* mulgated.

5. The authority of the biſhop extends only to the *2 Schram.Inſt.* perſon. He has no authority over a private eſtate.—*Jur.Ec. 153.* There is a difference between a benefice connected with

the care of fouls, and a benefice connected with a fpecial service. The antient *Britifh* church was a ftranger to papal authority; and laws were made to reftrain appeals to it. Even where there is a right, it may be left without a remedy by the claimant's negligence permitting a lapfe of time. The canon law fortifies a colourable poffeffion, the enjoyment of which has been permitted for a certain time, for one year, or for three years.

1798.

4 *Comm.* 103.
3 *Comm.* 242.

*Fleur. Inft.*
*Jur. Ec.* 347.
*Schram,* 252.

6. The cenfure of the bifhop of *Baltimore* is not regular. It is invalid for informality. There ought to have been three admonitions previous to it, in the prefence of witneffes; unlefs the cenfure be by law, which is public to all.

*Befom. Mor.*
*Chrift.* 96.
3 *Schram.Inft.*
292.

7. Notwithftanding a fufpenfion, or even excommunication, a prieft remains a prieft. He may adminifter the facrament of the mafs, though under a mortal fin. He may confefs and abfolve. A prieft though he do not preach is not lefs a prieft. A prieft cannot become a layman. The laying on of hands gives the holy fpirit, which cannot be taken away. To fuppofe otherwife would be inconfiftent with the prefumption on which the ordination is founded, that he is in a ftate of grace. The perfeverance of faints is an eftablifhed doctrine of the Calvinift church. The elect cannot fall away. The fpirit of God cannot be taken away by the cenfure of the church. A prieft who holds an eftate, on condition of faying mafs, is not affected by any interdict or cenfure of the church.

*Can. Conc.*
*Trid.*62. 104,
195.

*Conf. of Faith*
101. *Larg.*
*Catech,* 235,

8. This eftate was vacant, and acquirable by the firft occupant, qualified for performing the condition. It was not to be given by the executors, or by the bifhop. Any Catholic prieft, who fhould firft fet his foot on it might take it, hold it, and tranfmit it to his fucceffor. Occupancy is a title known to the law, the taking poffeffion of things belonging to nobody. This eftate was of that defcription.

2 *Comm.* 258.

*Young*, for the plaintiff. All fects of religion are protected by our laws; and, if an intruder be indulged in poffeffion of property belonging to the Roman Catholic church, the fame thing will happen in every church.— This cafe muft be decided with a due regard to the rules of the church of which the defendant is a member. If this man controvert the rules of the church of which he

profeffes to be a member, he is not a paftor; to ufe with due refpect the language of holy writ, " he cometh not in by the door, but climbeth in at a window, and is not the true fhepherd, but a thief and a robber."

1. The defendant's counfel has contended, that his priefthood is fo facred, that he cannot be devefted of it.

I fhall not difpute whether the defendant be in a ftate of grace, or not. All I will fay is, that, if he be, he has, by contradicting the folemn obligations which he has taken upon him, not fhewn any marks of grace.

No human authority can take from him his fkill in divinity, facred hiftory, and fpiritual gifts. But becaufe he poffeffes them, has he a right to exercife them, wher-ever he pleafes. I fhall fuppofe a compleat fcholar, bred at the univerfity of *Oxford*, inftructed as a lawyer at the inns of court, and in *Westminster Hall* advanced to the degree of fergeant or king's counfel, arrives here; is he intitled, without any other formality, to appear at the bar of any court in this country ? Let Dr. *Fromm*, with all his gifts of learning and grace, retire to his own country, and there exercife them, where the exer-cife of them was firft permitted.

*Apoft. Can. 12.* The rules of his church declare, that, if any prieft leave his parifh, and continue in another without his bifhop's confent, he muft no longer perform his liturgy; and, if, when his bifhop calls him back, he perfift in his irregularity, let him communicate as a layman. If any man will have ecclefiaftical offices performed without a *Gangran.* prieft conftituted by the confent of the bifhop, let him *Can. 6.* be anathema.

*Fromm* acknowledged the authority of bifhop *Carrol*, and accepted an appointment from him. Then he was a wretched beggar, having fquandered his money, un-able to pay his paffage from *Germany*, and was nourifhed by the liberality of the bifhop. Now, having obtained what he thinks an eftate, fecured to him for life, he fets the bifhop and the world at defiance. He has violated his facred obligation of fubjection to his fuperior, the bifhop of *Baltimore*; and, for this contumacious offence has been interdicted and fufpended, and is no longer a prieft quali-fied for the regular exercife of fpiritual functions.

2. This is faid to be a foundation for faying maffes yearly, for the foul of Mr. *Browers*. This is too abfurd

to be fuppofed in a man of fuch learning and fenfe, as 1798.
Mr. *Browers* poffeffed. *Browers* gave this eftate to en-
able a poor Catholic congregation to fupport a prieft
regularly admitted to adminifter inftruction and the fa-
craments to a flock which he loved. He gave it to his
*fucceffor* duly appointed according to the rules of his
church. Succeffor will be conftrued as a prieft regu-
larly inducted into the care of the fouls of this congre-
gation, over which Mr. *Browers* exercifed paftoral func-
tions. Suppofe Mr. *Browers* alive, and to prefent to
this cure on his foundation, he could not, without the *Can. Conc.*
confent of the bifhop; for the bifhop may reject an un- *Trid.* 229.
qualified prefentee of the patron. 103.

The true point in this cafe is, whether the executors
have a right to eject this intruder. I conceive they have
a right to keep poffeffion, till the ecclefiaftical fuperior
induct a proper tenant under the will. The will directs,
that his debts and funeral expences fhould be paid. It
fays not out of what fund. The perfonal eftate has been
dilapidated by fuch another reprobate as the defendant.
The real eftate, then, muft be a fund for payment of
debts. All authorities of this kind will be liberally con-
ftrued. A man who leaves this world without making
provifion for the payment of his debts muft remain in
purgatory. The executors had no right to prefent an
incumbent; but they had a right to take care of the
eftate, till an incumbent came. They could expend mo-
ney in improvement of the eftate, erecting a tomb, &c.
Hence refults an authority over it as fpecial occupants,
to fulfil the intention of the teftator. This objection,
like that to the jurifdiction of the bifhop of *Baltimore*,
lies not in the mouth of *Fromm*, who has admitted the
authority of the executors, by applying for their fanc-
tion annexed to his folemn inftrument of taking poffef-
fion. *Fromm* turns, as he ftates, to the eaft, weft, north,
and fouth; and does not, like each of the two antient
patriarchs, content himfelf with two of the quarters, but
takes all. And now he contends, that, poffeffion having
been acquired by him, with the confent of the executors,
their power is exhaufted. The whole tranfaction of his
occupancy is fraudulent, and the law will give no effi-
cacy to it. He impofed himfelf on the executors and
the congregation as a prieft appointed by the bifhop to

1798.          officiate in that congregation. And, when fufpected
and detected, he agrees to give up his poffeffion at the
will of the bifhop. He goes not to the bifhop for au-
thority, remains in poffeffion, and, at the end of the year,
the cunning old prieft fraudulently obtains and deftroys
the only paper, as he thought, which could deftroy his
new claim to the perpetual enjoyment of this eftate, by
virtue of his inherent fpiritual power of faying maffes ;
and fets at nought the facred duty, which Mr. *Browers*
muft chiefly have had in view, the care of the fouls of
this congregation. And, to confirm his eftate, he reforts
to triennial poffeffion. But this is where there is a co-
lourable title. However, we have nothing to do with
the canon law, as to the poffeffion of an eftate.

*Hargr. Co.*      The law, which abhors wrong, will not work a
*Lit. 42. a.b.* wrong. The law regards a lefs eftate by right, rather
*183. b.*   than a larger by wrong. Where the grant cannot take
effect according to the letter, the law will make fuch
conftruction, as that the gift may take effect. In debt
*Bull. Ni. Pri.* for rent, the tenant cannot plead *nil habuit in tenementis ;*
*170, 177.*   for the indenture concludes ¹ oth. An eftate was left
by will to *B.* his heirs, executors, and adminiftrators,
*2 Eq. Ca. Abr.* in truft, for the ufe of diffenting minifters, in places
*193.*   where the people are unable to allow them fuitable
maintenance. The truftee died before the teftator. It
was held, by the lord chancellor, that the truftee was
but an inftrument, to convey the legacy to thofe for
whofe ufe it was intended, and that, notwithftanding his
death, the charity itfelf, which was the fubftance and
reafon of the devife, is ftill fubfifting, and may be an-
fwered as fully, by the aid and directions of the court of
Chancery, as if the legatee were alive. Whatever rules
would be adopted in favour of proteftant diffenters in
*England,* will be applied to Catholics here.

    *Brackenridge,* for the defendant. Mr. *Fromm* came
into *America* a prieft of unqueftionable character. He
having acknowledged the jurifdiction of bifhop *Carrol,*
by accepting an appointment from him, I wave the
queftion of the publication of the bull, I wave alfo
the neceffity of monitions, and admit that *Fromm* has
been legally fufpended.

    I reft on the diftinction between an eftate to which
cure of fouls is annexed, and one depending on particu-

lar functions. A prieft once is a prieft always. Grace given can never be loft. Here is an eftate given on condition of faying maffes. No cenfure can deprive a prieft of this power. If a man has acquired an eftate, and difpofed of it, as he thought proper, will you apply it to another purpofe? The executors are not to have it and keep it. A prieft is to get it, and tranfmit it to a prieft, and fo forever: and the poffeffor is to perform the fervice of faying four maffes yearly for the foul of Mr. Browers. On the death of *Browers*, this eftate was vacant, to be taken poffeffion of by any prieft, as a fpecial occupant. *Fromm* took poffeffion in a folemn manner, under the will, without any confent of the executors. This made *Fromm's* title for life complete, and the fubfequent tranfaction, of the article for one year, is either mifreprefented, or cannot be fuppofed to deveft him of his intereft. The executors had either no power, or none to leafe for a year. Whenever they gave poffeffion, they were *functi officio*. This is a private eftate to which no cure of foul is annexed.

*Semple*, for the plaintiff. *Browers* left this eftate for the benefit of his poor congregation incapable themfelves of fupporting a prieft. *Fromm* comes forward pretending himfelf qualified. This is a fraud and vitiates the contract with the executors. *Fromm's* letter to bifhop *Carrol* acknowledges his jurifdiction, and prays his confent to admiffion to this congregation. *Fromm* can only acquire title to this eftate with the confent of the bifhop of *Baltimore*, whofe jurifdiction he cannot controvert.

Suppofe the ghoft of *Browers* hovering over us now, would he not blufh for the conduct of his unworthy fucceffor?

Sufpenfion incapacitates from difcharging the duties prefcribed by the will.

PRESIDENT. This cafe has been argued with ingenuity, and with good fenfe. Much canonical learning has been expended, the difcuffion of which I do not think neceffary, in deciding this cafe on its merits.

It is to be regretted, that people will apply to ignorant men to write wills and other papers affecting property. Had this will been written by a man of any fkill,

*B h*

competent to exprefs the meaning of the teftator, all this difpute might have been avoided. The teftator himfelf had but little acquaintance either with our laws or our language. As the will ftands, the meaning of the teftator feems to be difcoverable; and, if it be, we ought, if confiftently with eftablifhed rules, it be in our power, to carry it into effect.

*Theodorus Browers,* a prieft regularly exercifing paftoral functions in a congregation, was defirous of extending to this congregation his good will and fervices beyond his life. With this view, he made his will and devifed this eftate to the prieft who fhould *fucceed* him, and to his *fucceffors* forever. And on this fucceeding prieft, and every fucceeding prieft for the time being, he impofed the duty of faying maffes. As I view this will, therefore, no man could be legally admitted to the poffeffion of this eftate under the will, but one qualified to fucceed Mr. *Browers* in the difcharge of the paftoral duties in this congregation, according to the rules of the Roman Catholic church. When one fo qualified to fucceed Mr. *Browers,* in his paftoral charge, is admitted into the poffeffion of this eftate, he muft, to retain this poffeffion, continue to difcharge the paftoral functions in this congregation according to the rules of this church; and, befides thofe paftoral duties, he muft fay four maffes yearly for the foul of Mr. *Browers.*

I lay out of the queftion all difcuffion, whether a prieft can, by any fentence of the church, be reduced to the ftate of a layman, and difqualified from faying maffes, or difpenfing any of the facraments. It will be fufficient for me to afcertain whether *Fromm,* according to the rules of the Catholic church, was qualified to take, and is qualified to retain, poffeffion of this eftate, under the will as I have conftrued it.

On the conftruction, which I give the will, he was not qualified to take poffeffion of this eftate; for he was not regularly admitted to exercife the paftoral functions in this congregation; and this eftate was devifed for the ufe of a prieft regularly admitted to the difcharge of thofe duties, who fhould alfo, befides thofe duties difcharge the other duties of maffes for the foul of Mr. *Browers.* His difqualification has not been removed, but confirmed by the interdict and fufpenfion.

Had this been an independent congregation acknowledging no fuperior authority or appellate jurifdiction over their internal concerns, his prieft's office, and the affent of the congregation might have been a fufficient introduction of him into the enjoyment of this eftate. But, in other Chriftian churches, there are grades of jurifdiction, general and national councils, general affemblies, fynods, and prefbyteries; pope, patriarch, metropolitan, fuffragan, arch-bifhop, and bifhop. As, in churches of the prefbyterian form, no minifter can be regularly qualified to difcharge the paftoral functions in any congregation or parifh without the appointment of the prefbytery of the bounds; fo, in churches of the epifcopal form, without the appointment of the bifhop of the diocefe.

The bifhop of *Baltimore* has, and before, and at the time of *Fromm's* taking poffeffion of this eftate, had the fole epifcopal authority over the Catholic church of the *United States.* Every Catholic congregation within the *United States* is fubject to his infpection; and, without authority from him, no Catholic prieft can exercife any paftoral functions over any congregation within the *United States.* Without his appointment or permiffion to exercife paftoral functions over this congregation, no prieft can be intitled, under the will of *Browers*, to claim the enjoyment of this eftate. *Fromm* has no fuch appointment or permiffion, and is, therefore, incompetent to difcharge the duties, or enjoy the benefits, which are the objects of the will of *Browers.*

We cannot fuppofe, that Mr. *Browers* intended, that his eftate fhould be enjoyed by any vagrant irregular prieft, who might happen firft to occupy it. He furely meant a prieft regularly eftablifhed as paftor of this congregation. I feel it a duty to ftrain every expreffion againft the conftruction, that this is a foundation of maffes for the foul of the dead, without any care of the fouls of the living. And I find expreffions in this will, fufficient to fatisfy me, that *Browers* devifed his eftate to his fucceffors in the paftoral duties over that congregation.

With this opinion, it is not to be fuppofed that I fhould confider the poffeffion of Mr. *Fromm*, acquired

*B b 2*

**372**

as it was, otherwife than as the poffeffion of an intruder without any right. He himfelf feems in an honeft moment, to have confidered it in the fame light, and folemnly agreed to give it up, if the bifhop did not confent to his eftablifhment as prieft in that congregation.

I have no hefitation in faying, that the defendant has no right.

The next queftion is, whether the executors are the proper perfons to make a leafe on which to fupport an ejectment.

We have no court of Chancery in *Pennfylvania*, to fuperintend the execution of trufts. Perhaps it would have been proper to apply to the legiflature, to veft the eftate in truftees for the ufes of the will of *Theodorus Browers.* As the cafe ftands, no perfons are more proper, as leffors, than the executors. They have a right to poffeffion for fome purpofes, to build a tomb, &c. I have no inclination to look, with an eagle's eye, into every defect in point of form, when I am fo clear, that the defendant has no right to poffeffion. At any rate, I am not now prepared to fay, that, on this ground, there ought to be a verdict for the defendant. If the executors be incompetent to make a leafe, on which to fupport an ejectment, the defendant may obtain the deliberate opinion of this or a fuperior court. Now, I think, there ought to be a verdict for the plaintiff.

The jury found a verdict for the plaintiff.